Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br>                                  **Plaintiff**, <br><br>                    v. <br><br> **JAMES CRAFT** <br><br>                                  **Defendant.** | **Criminal No. 18-0085** <br><br> **OPINION** |

**SALAS DISTRICT JUDGE**

Before the Court is defendant James Craft's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 42 ("Motion"). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the Court DENIES the Motion.

**I.    BACKGROUND**

On May 1, 2018, Defendant pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (D.E. No. 15, Guilty Plea; D.E. No. 24, Final Judgment). After considering the relevant factors under 18 U.S.C. § 3553(a), submissions by counsel, the Presentencing Report ("PSR"), and arguments made at the sentencing hearing, the Court sentenced Defendant to ninety-nine months of imprisonment, followed by three years of supervised release. (Final Judgment at 2–3). Defendant is currently serving his sentence at the Federal Correctional Institution, Hazelton, West Virginia ("FCI Hazelton"). *Find an Inmate*, Federal Bureau of Prisons

1

("BOP"), https://www.bop.gov/inmateloc/ (last visited Nov. 5, 2021) (Reg. No.: 64654-050). His projected release date is July 4, 2027. *Id.*

Defendant moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Motion at 6[1]; D.E. No. 47). He argues that his excessive sentence, his difficult upbringing, his rehabilitation efforts, the COVID-19 pandemic, his race (African American), and his medical conditions—namely, chronic and acute headaches, shortness of breath, moderate asthma, degenerative spine damage, blindness in his left eye, periods of depression and anxiety, and injuries from a prior gunshot in the foot—create extraordinary and compelling circumstances to warrant a sentence reduction. (*See generally* Motion).[2] Specifically, Defendant asks the Court to run his federal sentence concurrently with his state sentence, which he has already served. (Motion at 13). On October 6, 2021, the Government submitted its opposition to Defendant's Motion. (D.E. No. 47 ("Gov. Opp. Br.")).

## II. LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that, in any case:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

---

[1] Unless otherwise specified, pin cites to Defendant's Motion refer to the pagination automatically generated by the Court's Electronic Case Filing system. This includes the medical records Defendant filed with his Motion. (Motion at 47–62). Pin cites to Defendant's medical records filed by the Government refer to the pagination at the bottom of the document.

[2] On November 24, 2020, prior to the filing of the instant Motion, Defendant filed the first motion for reduction of sentence under § 3582(c)(1)(A), which he withdrew on April 6, 2021. (D.E. Nos. 31 & 40). The Government addresses certain arguments Defendant only raised in the first motion, such as Defendant's age as a risk factor for contracting COVID-19. (*See* Gov. Opp. Br. at 3 &10). Because the first motion was withdrawn, the Court does not consider the arguments raised therein.

> of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
>
> (i). extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Per Congressional directive and prior to the enactment of the First Step Act, the Sentencing Commission issued a policy statement addressing motions filed by the Director of the BOP. U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018). However, the Sentencing Commission has not updated its policy statement since the First Step Act expanded relief under § 3582(c)(1)(A) by permitting defendant-filed motions for a sentence reduction. Thus, the Third Circuit recently joined the growing list of Courts of Appeals and held that, because the Sentencing Commission's policy statement "explicitly limits its application to [BOP]-initiated motions," the policy statement does not bind the Court. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021). Accordingly, no applicable policy statement exists for §3582(c)(1)(A) motions initiated by a defendant.

Nonetheless, defendants still bear the statutory burden to demonstrate that they are entitled to a sentence reduction by satisfying procedural perquisites and showing extraordinary and compelling circumstances. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Epstein*, No. 14-0287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). In addition, the Court must find that "the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, No. 18-0653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020); 18 U.S.C. § 3582(c)(1)(A).

### III.   ANALYSIS

####   A.   Exhaustion

As an initial matter, the Government does not dispute that Defendant has satisfied the exhaustion requirement.  (*See* Gov. Opp. Br. at 3).  Defendant filed his request for compassionate release with the BOP on July 3, 2021, which the BOP denied on August 5, 2021.  (Motion at 1, D.E. No. 47 at 1).  Because more than thirty days have passed since Defendant filed his request with the BOP, the Court agrees that the Motion is properly before the Court for consideration pursuant to § 3582(c)(1)(A).  *See United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020) (holding that the defendant may file the motion to the Court "thirty days after the warden receives his request").

####   B.   Extraordinary and Compelling Reasons for Reduction

As discussed above, prior to the enactment of the First Step Act, the Sentencing Commission issued a policy statement for § 3582(c)(1)(A) motions initiated by the Director of the BOP.  U.S.S.G. § 1B1.13.  The policy statement specifies that extraordinary and compelling reasons for compassionate release exist when, *inter alia*, the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.1(A)(ii)(I).  In addition, the policy statement includes a catchall provision that allows the Director of the BOP to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the enumerated reasons described in the policy statement.  *Id.* at cmt. n.1(D).  While the Court is not constrained by the Sentencing Commission's policy statement, it will refer to the policy statement for guidance and consider the relevant caselaw in determining whether extraordinary and compelling reasons

exist for a sentence reduction. *See Andrews*, 12 F.4th at 258–59.

        *i.*      *Race and Medical Conditions*

In the context of defendant-filed compassionate release motions in the wake of COVID-19, courts consistently consider two components under the extraordinary and compelling circumstances analysis: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-0101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020). With respect to evaluating defendants' medical conditions, courts have used as guideposts the CDC's list of medical conditions that can make individuals "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 8, 2021) ("CDC Medical Conditions List"); *see e.g.*, *United States v. Dent*, No. 18-20483, 2020 WL 4783921, at *3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at *2 (D.N.J. Aug. 14, 2020) (same). With respect to the likelihood of COVID-19 infection, courts in the Third Circuit and around the country have increasingly addressed the impact of vaccination when considering motions for compassionate release, taking into account, *inter alia*, the availability of COVID-19 vaccines at the prisons, the rates of vaccination among the inmate population and staff, and the defendants' vaccination records. *See, e.g.*, *United States v. Battle*, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (finding no "extraordinary and compelling reasons" existed when, despite his health

5

conditions, the defendant was fully vaccinated); *United States v. Kirkland*, No. 06-0911, 2021 WL 1541068, at *5 (D.N.J. Apr. 20, 2021) (holding that the defendant failed to establish an extraordinary and compelling reason for release because he and inmates in his wing were fully vaccinated and because the vaccination was highly effective); *United States v. Martin*, No. 98-0178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021) (collecting cases holding that the risk of infection from the Delta variant does not create extraordinary and compelling reasons for release when the defendant and the majority of his fellow inmates were fully vaccinated); *United States v. Bonilla*, No. 20-0083, 2021 WL 3634181, at *2 (D.N.J. Aug. 17, 2021) (collecting cases holding that an inmate's refusal to be vaccinated in the absence of a legitimate medical reason was fatal to establishing an "extraordinary and compelling" reason for compassionate release). With these decisions in mind, the Court will examine Defendant's medical conditions and his likelihood of being infected by the virus that causes COVID-19.

As an initial matter, the Court finds that Defendant fails to show that being an African American increases his risk of severe illness or death from COVID-19 while incarcerated. As the CDC explained, race and ethnicity are not independent risk factors for COVID-19 infection; rather, they are "markers for other underlying conditions that affect health, including socioeconomic status, access to health care, and exposure to the virus related to occupation, e.g., frontline, essential, and critical infrastructure workers." *Risk for COVID-19 Infection, Hospitalization, and Death by Race/Ethnicity*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/ investigations-discovery/hospitalization-death-by-race-ethnicity.html (last updated Sep. 9, 2021) (last visited Nov. 8, 2021). It is unclear how these underlying conditions, namely, "socioeconomic status, access to health care, and exposure to the virus related to occupation," may affect Defendant's risk of infection when he is incarcerated. Moreover, as discussed below, Defendant

6

is fully vaccinated and the vaccine's effectiveness has been observed "*among people of diverse age, sex, race, and ethnicity categories* and among people with underlying medical conditions." Moderna COVID-19 Vaccine Overview and Safety, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last updated Oct. 28, 2021) (last visited Nov. 8, 2021) ("Moderna Vaccine Overview") (emphasis added). The Court finds that Defendant fails to explain how, *while incarcerated*, his race either directly causes an increased risk of severe illness from COVID-19 or somehow constitutes a marker for such risk.

With respect to Defendant's medical conditions, it appears that he was never diagnosed with moderate asthma. Defendant's medical records indicate that he tested positive for SARS-CoV-2 virus on July 9, 2020, and was asymptomatic throughout the infection. (Gov. Opp. Br., Exhibit A ("Gov. Med. Rec.") at 1–2). After recovery from the infection, in October 2020, Defendant reported that he had shortness of breath. (*Id.* at 3). He was examined further through a chest X-ray, and the radiologist concluded that Defendant had "no acute cardiopulmonary disease," and that his "lungs [were] clear [and his] heart size [was] normal." (*Id.* at 34). Defendant was eventually diagnosed with "respiratory disorder, unspecified," for which he was prescribed with albuterol inhalers. (*Id.* at 5). By March 2021, however, Defendant no longer complained of shortness of breath, and his unspecified respiratory disorder was "resolved." (*Id.* at 20). Accordingly, the Court does not consider the alleged moderate asthma as basis for Defendant's request for compassionate release and finds that his respiratory disorder is currently under control.

Similarly, the medical records filed by Defendant and by the Government do not support that Defendant has anxiety or depression. Defendant made no recent complaint about his mental health conditions, and his medical records from the BOP consistently indicate that he has not been treated for any mental conditions at least in the past two years. (Gov. Med. Rec. at 10 ("Current

Mental Health Treatment: No; Current Mental Health Complaint: No," 37 (same); Motion at 60 (same)). However, Defendant's PSR documents his struggle with mental health issues and indicates that he was diagnosed with depression, bipolar disorder, explosive disorder, mood disorder, and adjustment disorder with mixed anxiety. (PSR ¶¶ 94–107). The last record in the PSR indicates that, in July 2018, while Defendant was serving his state sentence for violating his parole, Defendant was prescribed with Prozac and had participated in psychotherapy counseling sessions. (*Id.* ¶ 107). Nonetheless, more recent medical records show that, by July 14, 2020, Defendant "ha[d] been identified as a CARE1-MH inmate due to the absence of mental illness or the history/presence of mental illness absent any significant functional impairment or need for regular mental health interventions." (Motion at 55). The Court notes that certain mood disorders, including depression, are on the CDC's list of conditions that can place Defendant at an increased risk of severe illness from COVID-19. *See* CDC Medical Conditions List. But based on the most recent records, the Court finds that Defendant's mental conditions are also under control.

Defendant's medical records support that he suffered from the other conditions alleged—namely, chronic and acute headaches, blindness in his left eye, degenerative spine damage, and a gunshot wound to his right foot. (*See generally* Gov. Med. Rec.). However, none of these conditions have been identified by the CDC as conditions that can make an individual more likely to get severely ill from COVID-19. *See* CDC Medical Conditions List. The medical records also indicate that Defendant was a cigarette smoker for eleven years. (Gov. Med. Rec. at 41). The Government argues that, since Defendant's imprisonment in 2018, he has not been allowed to smoke in the state and federal prisons. (Gov. Opp. Br. at 16–17). Because "health risks presented by smoking drop significantly once a user quits and years [have] passed," the Government argues that Defendant is not entitled to compassionate release. (*Id.* at 17). The Court notes, however, the

CDC Medical Conditions List states that even being a *former* cigarette smoker "can" make a person "more likely to get severely ill from COVID-19."[3]  Nonetheless, Court's inquiry does not end here; the Court also must consider Defendant's likelihood of reinfection.

Defendant is currently housed at FCI Hazelton.  The facility houses a total of 1,952 inmates. *FCI Hazelton*, BOP, https*://www.bop.gov/locations/institutions/haf/* (last visited Nov. 8, 2021)*.* Since the onset of the pandemic, FCI Hazelton has had 131 inmates and 92 staff members test positive for COVID-19; those individuals have since recovered.  *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Nov. 8, 2021).  As of this writing, the facility has one inmate and zero staff member currently infected with COVID-19.  *Id.*  It appears that the facility has been combating the spread COVID-19 effectively.  More importantly, as of February 8, 2021, Defendant has been fully vaccinated against COVID-19.  (Gov. Med. Rec. at 31). Defendant received Moderna's COVID-19 vaccine, which is "94.1% effective at preventing laboratory-confirmed COVID-19 infection in people who received two doses and had no evidence of being previously infected."  Moderna Vaccine Overview.  As discussed above, the vaccine's effectiveness has been observed "among people of diverse age, sex, race, and ethnicity categories and *among people with underlying medical conditions.*"  *Id.* (emphasis added).  All approved vaccines, including the Moderna vaccine, are also "highly effective at preventing severe disease and death, including against the Delta variant."  *Delta Variant: What We Know About the Science*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated Aug. 26, 2021) (last visited Nov. 8, 2021).  Given the low infection rate at Defendant's facility and the fact that he is completely vaccinated, the Court finds that Defendant fails to show that he is at a

---

[3]   The Court also notes that Defendant was infected with the virus that causes COVID-19 and was asymptomatic despite being a former smoker, which cuts aagainst Defendant's argument that he faces a heightened risk from the virus.

greater risk of reinfection, or that he is at an increased risk of severe illness from COVID-19 if he was reinfected. *See Battle*, 2021 WL 4550925, at *2.

        ii.       *Sentence*

Defendant also argues that his case involves extraordinary and compelling circumstances because his sentence of ninety-nine months running consecutively to his three-year state imprisonment for a parole violation is "excessive under 18 U.S.C. § 3553(a)." (Motion at 31). Defendant's arguments are three-fold. First, he argues that because his state offense (the parole violation) and his federal offense (the felony possession) were based are the same underlying conduct—the illegal possession of a gun—the two sentences resulted from "relevant conduct" within the meaning of § 5G1.3(c) and § 1B1.3(a)(1) of the Guidelines. (Motion at 7–8). As a result, says Defendant, his federal sentence should run concurrently to his state sentence under § 5G1.3(c) of the Sentencing Guidelines.[4] (*Id.*). According to Defendant, the consecutive sentencing essentially subjected him to "multiple punishments for the same offense." (*Id.* at 8–9 & 31).

Next, Defendant argues that the Government committed an error under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), when it failed to "include the 'knowledge of status' element in jury instructions during his indictment hearing." (*Id.* at 9–10). Defendant alleges that he "knew nothing about [§] 922(g)(1) until he was indicted," and that, "due in part to ineffective counseling, he pled guilty to knowingly violating [§] 922(g)(1)." (*Id.* at 9).

Finally, Defendant argues that his case involves extraordinary and compelling

---

[4]    Section 5G1.3(c) of the Sentencing Guidelines states that:

> If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

10

circumstances because he is now "timed barred from relief" based on *Rehaif*. (*Id.* at 10). According to Defendant, the Court should grant him compassionate release and retroactively run his federal sentence concurrently with his state sentence. (*Id.*).

As an initial matter, to the extent that Defendant mounts post-judgment collateral attacks on his sentence and seeks to vacate, set aide, or correct his sentence, the proper venue is a habeas petition under 28 U.S.C. § 2255. *See United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (stating that a claim to vacate a defendant's sentence can be raised *only* in a § 2255 motion). This is because a compassionate release under § 3582(c)(1)(A) "provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019). Section 3582(c)(1)(A) certainly does not provide an end-run for defendants who are subject to the restrictions of § 2255 motions to collaterally attack their sentences. *See id.*

To the extent that Defendant does not challenge the validity of the sentence but nonetheless argues that his federal sentence is "extraordinary" because it runs consecutively to his state sentence (*see* Motion at 7), the Court disagrees. Preliminary, "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *Andrews*, 12 F.4th at 260–61. The statutory maximum term of imprisonment for a conviction under § 922(g) is ten years. 18 U.S.C. § 924(a)(2). Under the Sentencing Guidelines operative at the time of Defendant's sentence, which have been amended in provisions irrelevant to this Motion, the Guidelines range for Defendant's sentence was 92 to 115 months, based on a total offense level of 23 and a criminal history category of VI. (PSR ¶ 123). Thus, the ninety-nine months of imprisonment imposed by the Court were well within the statutory limit and the Guidelines range. Moreover, as the Court stated during the sentencing hearing, the Guidelines specifically recommended consecutive

sentence in a situation where, as here, a defendant violated his parole:

> Subsection (d) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed *consecutively* to the sentence imposed for the revocation.

U.S.S.G § 5G1.3(d), cmt. n.4(C) (2016) (emphasis added). While fully recognizing that the Guidelines were advisory, the Court exercised its discretion and imposed the sentence precisely as advised by the Guidelines. In fact, although the Guidelines were amended after Defendant was sentenced, Application Note 4(C) of § 5G1.3 remain the same. *Comp.* U.S.S.G § 5G1.3, cmt. n.4(C) (2016) *with* U.S.S.G. § 5G1.3, cmt. n. 4(C)) (2018); *see also United States v. Thomas*, 776 F. App'x 88, 94 (3d Cir. 2019) (upholding a sentence for a violation of supervised release that ran consecutively to the sentence for the underlying conviction based on the same conduct pursuant to the 2018 Guidelines). Thus, there was nothing extraordinary about Defendant's consecutive sentence, let alone circumstances so "extraordinary and compelling" that would justify a reduced sentence.

### iii.   Other Reasons

Finally, Defendant argues his personal history and rehabilitation efforts support a sentence reduction. (Motion at 15–26 & 27–31; *See* D.E. No. 46). It is unclear whether these arguments were raised as extraordinary and compelling reasons for a reduction of sentence, or whether they are raised as considerations under the § 3553(a) factors. As explained below, the Court will not consider the § 3553(a) factors in light of its finding that no extraordinary and compelling reasons exist to warrant a sentence reduction. For this reason, the Court does not address Defendant's personal history and rehabilitation efforts under § 3553(a). To the extent Defendant argues that

his upbringing and rehabilitation efforts, either independently or in combination with other circumstances, constitute extraordinary and compelling reasons for a reduction of sentence, the Court is not persuaded. As discussed herein, Defendant fails to sufficiently show that his sentence was somehow "extraordinary" or that he faces a heightened risk of severe sickness from COVID-19. Without more, Defendant's upbringing and rehabilitation efforts are insufficient to constitute extraordinary and compelling reasons for a reduction in sentence under § 3582. *See* 28 U.S.C § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Reed*, No. 06-0193, 2021 WL 914203, at *6 (W.D. Pa. Mar. 10, 2021), *appeal dismissed*, No. 21-1720, 2021 WL 4808011 (3d Cir. July 21, 2021) (declining to consider the defendant's rehabilitation efforts or to find "the statutory mandated extraordinary quality" when his "other proposed reasons—the impact of *Rehaif* on his conviction, the relative severity of his sentence, and the COVID-19 pandemic—affect many thousands of prisoners").

### IV. CONCLUSION

For these reasons, Defendant fails to present extraordinary and compelling reasons for a sentence reduction. Because Defendant does not pass the initial threshold under § 3582(c)(1)(A), the Court need not consider the applicable § 3553(a) factors. Defendant's Motion is DENIED. An appropriate Order accompanies this Opinion.

Date: November 22, 2021

*s/Esther Salas*
**Esther Salas, U.S.D.J.**